UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 09-23469-CIV-KING/BANDSTRA

**CARMEN ROSADO**,

    Plaintiff,

-VS-

CITY OF HIALEAH, et al.

    Defendants
_____/

### PLAINTIFF CARMEN ROSADO'S RULE 7.5 STATMENT OF FACTS IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS CITY OF HIALEAH [D.E. 47] OFFICER FRITZ JANVIER [D.E. 84] and OFFICER DANIEL PELAEZ [D.E. 83] MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff, CARMEN ROSADO by and through her undersigned counsel and files this Rule 7.5 Statement of Facts In Support of Plaintiff's Response in Opposition to the Defendant City of Hialeah, Officer Fritz Janvier and Officer Daniel Pelaez' Motion for Summary Judgment [D.E. 47, 83, 84] and states as follows:

### STATEMENT OF FACTS

In July of 2007, Hialeah officers of the Hialeah police department were summoned to the apartment of Plaintiff Carmen Rosado at 3940 Palm Avenue, apt. #15, Hialeah, Florida. The apartment is a one bedroom apartment located on the second floor with the windows facing a walkway. This call was a culmination of threatening events that was a result of her terminating a one month relationship with a gentlemen by the name of Randall Gavilla. Mr. Gavilla, the exboyfriend, refused to accept her decision to end her personal relationship and began engaging in

stalking and threatening behavior over several weeks prior to that day.  Ms. Rosado obtained a restraining order.  She and her daughter had placed the restraining order in his mailbox earlier that same day.  The apartment was occupied along with Ms. Rosado by her daughter Luz Rivera.  At the time of the incident, Martha E. Garcia and Silvia Carranza were visiting. [Exhibits "A","B","C"- Afdv CR, LR, & MG] [LR, 24:22-25:3] [CR, 168:3-11] [LR, 152:22-163:2]

On July 21, 2007, Mr. Gavilla appeared outside Plaintiff Rosado's apartment with a copy of the restraining order she had left in his mailbox. [CR,221:8-16].

Upon discovery of the restraining order Mr. Gavilla went to Ms. Rosado's residence and began banging on her windows and apartment door.  He threw the restraining order into the apartment through the open kitchen window.  She closed the window. [CR,8:15-19; 222:18-23; 223:1-4].  She testified that she told time she didn't want to talk to him anymore [CR, 8:14-19; 222:9-23].  Mr. Gavilla's behavior over a short time escalated from angry words to finally reaching through the burglar bars on the apartment windows and breaking the glass on all of the windows facing the walkway.  Four calls were made to the police 911 over 15 to 20 minutes.  The dispatcher advised that officers were tied up on previous calls and would respond as soon as possible.  The last 911 call, reported Mr. Gavilla smashing the apartment window.

Luz Rivera, Plaintiff's adult daughter [LR,3:21-22], awoke from a nap and observed her mother talking to Mr. Gavilla. [LR, 24:1-3; 24:14-21; 25:4-8]   Plaintiff Rosado signaled her daughter to call police. [LR, 25:11-15; 27:21 - 28:1; CR, 218:16-2- 219:17; 224:6-12; 227:6-9]

At 20:32:33 (8:32:33 p.m.) [Ex.1-34,p1], Plaintiff's daughter called 911 [LR, 28:2-3], identifying herself as "Patricia" [CR,214:11-13; LR, 69:7-9] and gave her mother's cell phone number [CR,214:14-16; LR, 69:10-12] to the 911 emergency call taker.  The daughter told the call

taker that Mr. Gavilla was outside her mother's apartment at 3940 Palm Avenue, Apt. 15, Hialeah, Florida, talking to her mother through the window, and that there was a restraining order against him, and that her mother didn't want to talk to him. [CR,212:12 - 213:12]

The daughter told the call taker that her mother's ex-boyfriend keeps trying to harass her, and that they just "want to get rid of him." [LR, 69:16-22; 214:20 - 215:1]. The caller was told that an officer would be dispatched as soon as one became available and that her call was next in line to be dispatched. [LR, 70:7-24; CR, 215:11 - 216:3]. After being assured that the ex-boyfriend was just standing there at the window, not doing anything except "trying to talk to my mom...[who] doesn't want to talk to him, she's telling him to go away*****[and t]he window is closed" [CR, 216:7-15; LR, 71:3-11], the call taker advised the caller that she and her mother should step away from the window and wait for the officer to arrive. [CR, 216:16-18; LR, 71:12-14]. She was told that if he tries to break in or anything, she should call back. [CR, 215:11 - 216:5] The call ended with the caller advising, "Okay. Thank you." [CR,216:19-20; LR, 71:15-16].

Plaintiff Rosado testified that after her daughter "hang[s] up, "that's where everything started going really wild and he [Gavilla] wanted to bring down the door... ." [CR, 232:6-10; 243:17-20]. Plaintiff testified that Gavilla "first broke the kitchen window, which is where I was talking to him, [h]e broke, then, the living room window, and since we still were not paying attention to him, he wanted to bring the door down. Martha and Sylvia were there, holding the door." [CR, 229:6-14; CR, 226:3-7].

At 20:39:01 (8:39:01 p.m.) Plaintiff Rosado's daughter Luz Rivera made a second call to 911. [CR, 229:21-24; LR, 72:22-24]. She advised that the subject was banging on the window but "[h]e can't get in, of course, we have bars, but he's banging on the window." [LR, 73:21-23; CR,

230:22-23, 234:4-5; see also LR, 25:7-11, 170:21-25, 180:16-18; CR, 223-25 - 224:2]. The call taker advised that the next available officer would be dispatched but that if the situation escalated, the caller should call back. [CR, 231:10-22; LR, 74:10-22]

Plaintiff Rosado testified she was standing between her daughter with her back to the window when it was broken. [CR,225:2-7; 225:14 - 226: 226:7; 228:5-19; 229:4-5]. She also testified that she saw Mr. Gavilla break the window with his fist [CR, 83:13-14]

Plaintiff Rosado testified that her daughter Luz Rivera was talking to the police when he [Gavilla] was breaking the windows. [CR,244:8]. She testified that her daughter was on the phone with the call taker "the moment he broke the window against [i.e., the second or living room window]." [CR, 229:16-20]. Plaintiff testified that when "he [Gavilla] wanted to bring down the door.

The audiolog captured the events corresponding to the events Plaintiff Rosado described from the time Gavilla was breaking the windows. Plaintiff's daughter Luz Rivera was reporting as they were occurring in Plaintiff's apartment beginning at 20:43:19 (8:43:19 p.m.). [CR, 237:16 - 243:15].

Plaintiff Rosado testified that it was during this call that Randall Gavilla was breaking the windows. [CR, 243:17-20]. At 20:43:20 (8:43:20 p.m.) Plaintiff's daughter Luz Rivera is heard on the audiolog screaming, "Oh, my God. Oh my God. He's right here breaking all our fucking windows." [CR, 238:4-6; LR, 76:13-15]. At 20:43:42 (8:43:42 p.m.), the call taker entered "subject just broke into the residence" [Ex.1-34, p.2] into her computer assisted dispatch notes ("C.A.D." and at 20:43:31 (8:43:31 p.m.) The classification ("nature") of the call was changed from 34 disturbance to 3-34 [Ex.1-34, p.1, 2], giving it the highest level emergency response code. [AdmOrd 87-2, pp.3-

4:IV.B]. Based on the information input into the computer assisted dispatch ("C.A.D."), the dispatcher immediately dispatched unti 2224 (Pelaez) at 20:43:43 (8:43:43 p.m.) and unit 2220 (Janvier) at 20:43:50 (8:43:50 p.m.). [Ex.1-39; Ex.3-43, p.1] At 20:44:59 (8:44:59 p.m.). Ms. Rivera advises dispatcher that Mr. Gavilla left. [CR, 238:11-12; LR, 76:20-21]

From the time the communication with Plaintiff' daughter Rivera was re-established at 20:43:19 (8:43:19 p.m.) and Gavilla started breaking the first window until Gavilla was reported leaving at 20:45:07 (8:45:07 p.m.), a total of 1 minute 58 seconds had elapsed.

Ms. Rivera then reported that Mr. Gavilla was not in the apartment [LR, 77:7-9; CR, 239:23-24], that everybody's outside the apartment [CR, 239:2-7], that Mr. Gavilla turned right on 39 [CR, 239:7-8], and that everybody's downstairs in front of their apartment building across from Sedano's [CR, 239:15-19]. Plaintiff's daughter testified that within seconds of breaking the windows, Mr. Gavilla fled.

At 20:47:18 (8:47:18 p.m.), Sgt. Rosengaus, the sector sergeant, who had been monitoring the communications channel, advised dispatch that the vehicle in which Mr. Gavilla fled had previously been reported with a temporary tag and that the restraining order had not yet been served as of that date. [RP, 259:18 - 260:17]. The information was input into the CAD at 20:47:28 (8:47:28 p.m.) [Ex.1-34, p.2] At 20:47:36 (8:47:36 p.m.), immediately after the sergeant's call, unit 2222 (Officer Jordana) took an arrival. [RP, 256:1-16; 258:17 - 259:5; 260:18 - 264:23: Ex. 1-34,p1; Ex.1-62, 3/15_20:43]. His arrival was input into the CAD at 20:48:11 (8:48:11 p.m.) [Ex.1-34]. There is no documentation of Officer Pelaez' arrival. [Exhibit " D"]

At this time, Plaintiff Rosado's daughter Luz Rivera, and Martha Garcia were back in the apartment, Sylvia Carranza had left [CR, 534:5-12], and Plaintiff Rosado was sweeping up the glass

from the floor [CR, 534:12-13] when, through the window, she saw the first uniformed officer arrive (Jordana). [CR, 533:23-25; 534:14-16; 535:5-6]. She recognized the officer from prior incidents when he had responded to her apartment. [CR, 534:17 - 535:2]. Officer Jordana had been dispatched to Plaintiff Rosado's apartment a week earlier on July 14, 2007, and had taken a stalking, criminal mischief (tire slashing), and phone threat report and had advised Plaintiff Rosado to seek a restraining order. [Ex. 1-14]. Plaintiff told Officer Jordana, "Look, just now, he left, go get him." [CR, 535:6-7]. Before he left, she "asked him to call the paramedics because my daughter wasn't feeling well." [CR, 535:15-16]. At 20:49:54 (8:49:54 p.m.) Officer Jordana advised dispatch to have Fire Rescue respond to the scene because 22 year old female was having difficulty breathing. He also advised dispatch to lower response level because suspect had fled. At (8:50 p.m.) Officer Curbelo stopped Mr. Gavilla at West 8th Avenue and 21st Street and arrested him for driving while license suspended. [Ex.1-20]. He summoned Officer Jordana to the arrest scene and Officer Jordana met with Officer Curbel and the arrested the suspect at West 8th Avenue and 21st Street at approximately 20:50 (8:50 p.m.) [Ex.1-62] At 20:50 (8:50 p.m.) Officer Jordana arrested Mr. Gavilla on the stalking and other open allegations from the week before July 14, 2007. [Ex.1-14, p.9] At 20:55 (8:55 p.m.) Officer Diaz arrived at the West 8th Avenue and 21st Street location and arrested Mr. Gavilla for attempted burglary on the 3-34 situation on which officers had been dispatched to Plaintiff Rosado's apartment on the 3-34. [Ex.1-19]

As the result of this commotion caused by the boyfriends' assault on the apartment, Luz Rivera and Carmen Rosado's daughter began to hyperventilate. After breaking the glass and attempting to break the door of the apartment, Gavilla left the scene. Shortly there after he left, the Hialeah police officer Jordana arrived who was advised that the boyfriend had left the scene. At first

responding officer was after being advised that Gavilla had left the scene and the direction he went was also asked to summon fire rescue on behalf of Plaintiff's Carmen Rosado's hyperventilating daughter.

Uniformed [CR.536:5-7] paramedics arrived at the apartment complex at 20:56 (8:56 p.m.) [Ex.1-24]. Two or three police officers were downstairs in the apartment complex when the paramedics arrived. [5:23 - 6:1]. The paramedics walked into the complex threw an inside courtyard. [DL, 10:5-6, FZ, 5:23 - 6:1]. The dispatched information they had been given was that someone inside the apartment was having difficulty breathing. [DR, 7:23 - 8:1; 9:3-8; FZ, 6:20-22]. Two officers – advised them of the situation which was explained as a domestic disturbance, that the aggressor had fled, and that rescue was called because someone in the apartment was having difficulty breathing. [DL, 7:23-24; FZ, 6:17 - 7:5]   Plaintiff Rosado and Martha Garcia "were fanning me [Plaintiff's daughter] until the paramedics came. [LR,         ; CR, 536:18-25; CR, 537:24-25]

The task of the rescue crew is basically "medically evaluate the patients." Fire rescue arrived and a paramedic began to attempt to treat Luz Rivera. She was by this time laying on the floor in the livingroom of the apartment. The paramedic was requesting medical history from Ms. Rosado. Ms. Rosado was standing next to the paramedic attempting to give him basic information about her daughter. [CR, 538:1-11] Ms. Rosado was visibly shaken and excited. Officer Fritz Janvier was a second HPD officer arriving at the scene. He entered the apartment and immediately approached Ms. Rosado who was standing next to the paramedic and seized her by the arm without saying a word. [CR, 539:19-22; LR, 296-299] Ms. Rosado recoiled from Officer Janvier's grasp. [CR, 540:10-17; 541:15-25] Officer Janvier drew his taser and pointed it at Ms. Rosado. She turned her

back toward him just as he discharged his taser. [CR,541-545] She was struck in the back by the taser darts and immediately collapsed to the floor. [CR,541-545] Visitors Luz Rivera and Martha Garcia both protested to the officer that Ms. Rosado had medical problems with her heart. Visitor Martha Garcia claimed that she was seized by a second unidentified officer who threw her against the wall and forced her to the floor and handcuffed her. After she was handcuffed on the floor, she was tased on her back. [Afdt. MG; LR,302-304] Officer Janvier approached Ms. Rosado were she lay on the floor and grabbed her by the left arm to move it behind her back in an attempt to handcuff her. Ms. Rosado alleges that she heard a popping sound and felt the sharp pain. She cried out "you broke my arm". Officer Janvier released her. [CR, 547:1-6; 552:1-21] As she lay on the floor the paramedic examined her briefly and determined that she had suffered an injury. She was left on the floor for more than half an hour until the Hialeah police department crime scene technicians could be summoned to photograph the scene and her. She had urinated on herself as the result of collapsing to the floor. [CR,556-557] After the scene was photographed and her laying on the floor was documented, she was raised to her feet and placed on a chair. The taser probes were removed from her back by the paramedic who had been there since the initial incident. After the taser probes were removed from her back, her arm was splinted as she was escorted from the apartment to a police vehicle. She was charged with Battery on a Police Officer. The arrest report reads as follows:

> *On the 21 day of Sat 2007 at 2043 at 3940 Palm Avenue #15*
> *I was dispatched in emergency mode to the above location cross reference case (07-29285). Upon arrival, I observed Ofcr. Janvier (1620) grab the Def. By her right hand. The Def. Then punched Ofcr. Janvier in his chest. While Ofcr. Janvier was attempting to handcuff the Def., the Co-Def. Began punching Ofcr. Janvier on his back screeming "let go of her" in spanish. The Def. was taken into custody and transported to Hialeah Hosp. Ref: Arrest.*

The arrest report was signed by Officer Daniel Pelaez alleging that he observed the probable cause that had occurred. Carmen Rosado was never interviewed regarding her injuries. (Exhibit "F")

Martha Garcia was arrested, she was charged with Battery on Officer Fritz Janvier. Her arrest report reads as follows:

> *On the 21 day of Sat 2007 at 2043 at 3940 Palm Avenue #15*
> *I was dispatched in emergency mode to the above location cross reference case (07-29285). Upon arrival, I observed Ofcr. Janvier (1620) grab the Co-Def. by her right hand. The Co-Def. then punched Ofcr. Janvier in his chest. While Ofcr. Janvier was attempting to handcuff the Co-Def. the Def. began punching Ofcr. Janvier on his back screaming "let go of her" in spanish. The Def. was taken into custody without incident. Def. arrested and transported to jail.*

Ms. Garcia's arrest report was signed under oath by Officer Daniel Pelaez. Both Ms. Rosado and Ms. Garcia deny the allegations of Officer Pelaez' that they resisted and/or struck Officer Janvier on that day. [Exhibit "A","B", "C"] No use of force report was made regarding Ms. Garcia's arrest. [Exhibit 'F"]

Officer Janvier began to handcuff her by grasping her arm or wrist while she was on the floor and twisting it in routine fashion to a normal handcuffing position behind her back. [CR, 12:3-5; 457:13-17]. As he did so, Plaintiff screamed out in pain and the officer immediately released her arm. [CR, 12:5-8; 458:13-22] Plaintiff incurred a radial head fracture and posterior radio ulnar dislocation of the left elbow as shown in x-rays. The injury was incurred after she was tasered and fell to the ground.

Both criminal prosecutions were **"no actioned"** on August 10, 2007. Both officers Janvier and Pelaez failed to appear for the pre-filing conference with the State Attorney's Office which is required prior to filing a criminal information.

Hialeah Police Department Administrative Order 89-5 establishes procedures to provide supervisory review of arrest. Officers are required to notify a supervisor whenever an arrest has been made and the supervisor is required to respond to all arrest scenes. The purpose is to view the arrestee and to protect the officer from complaints of abuse. (Exhibit "E")

Hialeah Police Department Administrative Order 99-1 establishes procedures whenever force is used. Whenever an officer strikes an arrestee redirects the subject to the ground or uses any force and/or if there are any complaints of injury or if he discharges his weapon in a performance of the arrest a control of person report shall be completed. A supervisor must respond to the scene and investigate every case that requires a control of person report. That report shall be reviewed by the shift commander and the division commander. That report is routed to the office of the Chief of Police. A copy is forwarded to the Internal Affairs section. (Exhibit "F ")

Hialeah Police Department Administrative Order 2003-2 sets forth produces whenever a taser is discharged. It requires the supervisor respond to the scene where taser is discharged. A report of the incident shall be documented. All taser discharges shall be recorded in the officer's taser log. That log must be signed by a supervisor. Supervisors are required to inspect officers' taser and log every 30 days. [Exhibit "G"]

Plaintiff's counsel requested the above reports through discovery. (Exhibit "H", "I") The control of persons report (Use of Force Report) for Ms. Rosado only, was reconstructed on January 27, 2010, after the institution of this law suit and three (3) years after that incident. [Exhibit "J"] Likewise, taser download printouts for all officers responding to the scene on July 21, 2007 are also unavailable with the exception of Officers Sergio Diaz and Manuel Diez. [Exhibit "I"] (Printouts provided were for only two Officers Sergio Diaz and Manuel Diez only.) Records of taser log

entries of discharges for any of the other officers are also unavailable in direct violation of Administrative Order 2003-2. (Exhibit "G"). See also [Exhibit "K"]

DATED:     September 22, 2010

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was served on this 22 day of September 2010, on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_____
ARTHUR B. CALVIN, PA
Attorney for Plaintiff/ROSADO
3006 Aviation Avenue, Suite 4B
Coconut Grove, Florida 33133
Tel:    (305) 444-8292
Fax:   (305) 856-6988
FLA. BAR NO. 270431
abcalvinpa@gmail.com

## SERVICE LIST

United States District Court, Southern District of Florida
Carmen Rosado v. City of Hialeah, et al.
Case No. 09-23469-Civ-KING
Magistrate Judge Bandstra

**ALAN E. KRUEGER, ESQ.**
Assistant City Attorney
501 Palm Avenue
4th Floor
Hialeah, Florida 33011-0040
Tel:   (305) 883-5853
Fax:   (305) 883-5896
Akrueger@hialeahfl.gov
*Attorney for Defendant: City of Hialeah*
Service by CM/ECF


Gaebe, Mullen, Antonelli & Dimatteo, PA
**DEVANG DESAI, ESQ.**
**MARK R. ANTONELLI, ESQ.**
420 South Dixie Highway
Third Floor
Coral Gables, Florida 33146
Tel:   (305) 667-0223
Fax:   (305) 284-9844
ddesai@gaebemullen.com
*Attorneys for Defendants:*
*Officer Fritz Janvier & Officer Daniel Pelaez*
Service by CM/ECF